UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF OHIO
EASTERN DIVISION


STATE OF NEW YORK, et al.,

        Plaintiffs,                    Case No. 2:04-cv-1098
                                     JUDGE GREGORY L. FROST
      v.                        Magistrate Judge Norah McCann King

AMERICAN ELECTRIC POWER
SERVICE CORP., et al.,

        Defendants.


UNITED STATES OF AMERICA,

        Plaintiff,                    Case No. 2:05-cv-360
                                     JUDGE GREGORY L. FROST
      v.                        Magistrate Judge Norah McCann King

AMERICAN ELECTRIC POWER
SERVICE CORP., et al.,

        Defendants.


## OPINION AND ORDER

These consolidated Clean Air Act actions[1] are currently before the Court for

consideration of a Motion to Strike Affirmative Defenses filed by Plaintiff, the United States

(Doc. # 6 in 2:05-cv-360), a memorandum in opposition filed by Defendants American Electric

---

[1] In a January 6, 2006 Order, Magistrate Judge Terence Kemp consolidated case Nos. 2:04-cv-1098 and 2:05-cv-360 and ordered that all future filings be filed in both actions. (Doc. # 33 in 2:04-cv-1098; Doc. # 30 in 2:05-cv-360.) The parties are again **ORDERED** to file all filings in both actions, something the 2:04-cv-1098 parties failed to do in regard to their March 16, 2006 filings. (Docs. # 36, 37.)

1

Power Service Corporation ("AEP") and Appalachian Power Company[2] (Doc. # 9), and a reply memorandum filed by the United States (Doc. # 10).  For the reasons that follow, the Court finds the motion to strike well taken in part.

## I.  Background

Given the type of filings addressed in this Opinion and Order, the Court need not and does not set forth the facts in much detail here.  Of import for present purposes is that Case No. 2:05-cv-360 is an action brought by the United States against several power companies, collectively referred to as the AEP companies ("AEP"), in which the government seeks to enforce various civil penalty and injunctive relief provisions of the Clean Air Act.  The United States asserts that AEP modified electric generating units that AEP continues to operate in contravention of various Title 42 provisions.

AEP responded to the complaint by asserting thirty-seven affirmative defenses.  (Doc. # 2, at 28-38.)  On August 15, 2005, the United States filed a motion to strike many of these defenses.[3]  (Doc. # 6.)  AEP in turn abandoned many of the targeted affirmative defenses, but seeks to preserve its statute of limitations, laches/equity, and rulemaking defenses.  The parties have completed briefing, and the motion to strike is ripe for disposition.

---

[2]  Defendant Appalachian Power Company joined AEP's memorandum in opposition. (Doc. # 9, at 1 n.1.)  For ease of reference, the Court shall adopt Defendants' practice and refer to the motion and the arguments made therein as belonging to AEP, although this decision pertains to Appalachian Power Company as well.

[3]  The parties do not consistently reference the numbered defenses involved in the motion to strike.  For example, the United States' motion states that it seeks to strike twelve affirmative defenses (Doc. # 6, at 1), but AEP responds by addressing several other defenses, and the United States in its reply memorandum recognizes that sixteen defenses are actually involved (Doc. # 10, at 2 n.2).  Accordingly, the Court has addressed those defenses the parties discuss.

## II.  Analysis

### A.  Standard Involved

The United States attacks AEP's affirmative defenses under Federal Rule of Civil

Procedure 12(f), which provides:

> Upon motion made by a party before responding to a pleading, or, if no
> responsive pleading is permitted by these rules, upon motion made by a party
> within 20 days after the service of the pleading upon the party or upon the court's
> own initiative at any time, the court may order stricken from any pleading any
> insufficient defense or any redundant, immaterial, impertinent, or scandalous
> matter.

Fed. R. Civ. P. 12(f).  A motion to strike an affirmative defense under this rule "is proper if the

defense is insufficient; that is, if 'as a matter of law, the defense cannot succeed under any

circumstances.' "  *U.S.S.E.C. v. Thorn*, 2:01-CV-290, 2002 WL 31412440, at *2 (S.D. Sept. 30,

2002) (quoting *Ameriwood Industries Int'l Corp. v. Arthur Andersen & Co.,* 961 F. Supp. 1078,

1083 (W.D. Mich.1997)).  Such a motion is also proper "if it aids in eliminating spurious issues

before trial, thereby streamlining the litigation."  *Id*.

### B.  Discussion

As noted, AEP has narrowed the disputed defenses remaining in this action.  The

company does not contest the United State's motion to strike its selective enforcement, Tenth

Amendment, and Commerce Clause defenses.  Accordingly, the Court **GRANTS** the motion to

strike AEP's seventeenth, twenty-ninth, thirtieth, thirty-first, thirty-third, and thirty-fourth

affirmative defenses.  This leaves the United State's request to strike AEP's statute of

limitations, laches, equity, and rulemaking defenses.  The Court shall proceed to address each of

these alleged defenses in turn.

#### *1.  Statute of limitations*

3

In its fifth affirmative defense, AEP asserts that the statute of limitations contained in 28 U.S.C. § 2462 and the concurrent remedy doctrine bar the claims against the company.  That statute provides that "[e]xcept as otherwise provided by an Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued."  28 U.S.C. § 2462.  The concurrent remedy doctrine provides that " 'equity will withhold its relief ... where the applicable statute of limitations would bar the concurrent legal remedy.' "  *Sierra Club v. Dayton Power & Light, Inc.*, No. 2:04-CV-905, 2005 WL 1972549, at *4 (S.D. Ohio Aug. 12, 2005) (quoting *Cope v. Anderson,* 331 U.S. 461, 464 (1947)).  The United States moves to strike AEP's fifth affirmative defense on the grounds that § 2462 does not apply to injunctive relief claims at all and not to civil penalty claims occurring within five years prior to the date this lawsuit commenced.  The government also argues that the concurrent remedy doctrine does not apply to actions brought by the United States.

In regard to whether § 2462 can apply to the claims for civil penalties, the Court concludes that the statute indeed reaches these claims.  AEP argues that the Court should not strike the affirmative defense because the United States relies on a construction-permit statute as opposed to an operating-permit statute, and the projects at issue here were constructed between 1990 and 1997.  The United States counters by relying in part on an opinion by another judge in this District, which reasoned:

> The Court next considers the Defendants' assertions that the complaint should be dismissed because the Citizens' claims are outside the scope of § 7604(a)(3) and that the claims are barred by the statute of limitations.  The Citizens seek civil penalties and injunctive relief for the Defendants' operation and modification of facilities without having obtained permits under the Prevention of Significant Deterioration ["PSD"] and the New Source Review

["NSR"] provisions of the Act.  The Defendants contend that it is not a violation of the Act to "operate" as opposed to "construct" a facility without the relevant permits.  Defendants point to § 7604(a)(3), which provides a cause of action against "any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I ... or part D of subchapter I ... ." 42 U.S.C. § 7604(a)(3).  Thus, according to the Defendants, "operating" a facility without a permit is not prohibited.

As the Citizens correctly observe, such a conclusion is not only contrary to the statute, but it is also illogical. Section 7604(a)(3) provides a cause of action against a person "who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit."  Thus, operation of a facility in violation of any condition required by a permit is a violation of the statute.

A review of the PSD requirements supports this conclusion.  The requirements clearly contemplate limitations on emissions that occur after a source is constructed or modified.  Indeed, "construction" includes "modification" of any source or facility. 42 U.S.C. § 7479(2)(C).  In turn, a "modification" is defined to include "any physical change in, *or change in the method of operation of,* a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." 42 U.S.C. § 7411(a)(4) (emphasis added).  Furthermore, pursuant to 40 C.F.R. § 52.21(w)(1), a permit remains in effect unless or until it expires or is rescinded.  Based upon the foregoing, the Court finds it illogical to conclude that a defendant may only be held liable for constructing a facility, rather than operating such facility, without complying with the permit requirements.

The Court further rejects the Defendants' assertion that § 7604(a)(3) does not authorize suit for wholly past violations of the Act, *i.e.,* violations which take place after construction of a facility is completed.  The Defendants rely upon the Supreme Court's decision in *Gwaltney v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), in support of this proposition. At issue in that case was § 505(a) of the Clean Water Act, which authorized citizen suits when the Defendant was "alleged to be in violation" of the Act.  The Court held that this language did not encompass wholly past violations of the Act.  The CAA, as amended in 1990, however, effectively overruled the *Gwaltney* holding with respect to past violations of the Act.  As § 7604(a)(3) makes clear, citizens can bring suit against any person "who is alleged to have violated ... or to be in violation of any condition of such permit."  Indeed, courts have recognized that the amendments to the CAA "permit[ ] citizen suits for both continuing violations and wholly past violations, so long as the past violation occurred more than once." *Fried v. Sungard Recovery Services, Inc.,* 916 F.Supp. 465, 467

(E.D.Pa.1996); *see also Atlantic States Legal Found. v. United Musical Instrs.,* 61 F.3d 473 (6th Cir.1995) (noting that the 1990 CAA amendments allow citizen suits for wholly historical violations).  In sum, this Court rejects the Defendants' assertion that the claims advanced by the Citizens herein are outside the scope of § 7604(a)(3).

The Defendants also seek dismissal on the basis that the majority of the Citizens' claims are barred by the five year statute of limitations found in 28 U.S.C. § 2462.  With respect to their claims for civil penalties, the Citizens argue that the alleged violations are "continuing" so as to toll the five year limitations period.  The Citizens rely upon the continuing violation theory articulated by the Sixth Circuit in *Tolbert v. Ohio Dept. of Transportation,* 172 F.3d 934 (6th Cir.1999), in support of this theory.  The doctrine applies where a violation, which occurred outside the relevant limitations period, is so closely related to other violations that are not time-barred, so as to be viewed as part of a continuing practice such that recovery may be had for all violations.  *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380-81, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).  In *Tolbert,* the Sixth Circuit held that the defendant's wrongful conduct must continue after the precipitating event that began the pattern; the injury must continue to accrue after the event; and, further injury to the plaintiff must have been avoidable if the defendant had ceased its wrongful conduct.  *Tolbert,* 172 F.3d at 939.  The Citizens argue that each element is satisfied in this case.

This Court concludes that whether or not the Citizens satisfy the elements of continuing violation doctrine is not germane to the issue at bar.  As the Court stated *supra,* the CAA clearly authorizes citizen suits for what is considered a continuing or wholly past violation.  In the Court's view, the relevant inquiry is the extent of the civil penalty which may be imposed in the event the Citizens prevail upon their claims.  This Court concludes that 28 U.S.C. § 2462 limits the time to five years in which civil penalties may be sought for days in which the Defendants allegedly violated the CAA.  Thus, to the extent the Citizens seek relief outside of this time, the Defendants' motion to dismiss is meritorious.  To the extent, however, the Defendants seek to dismiss claims which allege historical violations of the CAA, the motion is without merit.

*United States v. American Elec. Power Service Corp.*, 137 F. Supp. 2d 1060, 1065-67 (S.D. Ohio 2001) (footnotes omitted).

The Court is skeptical of portions of the foregoing analysis.  First, this Court's reading of the statute at issue presents a narrower statutory scheme than that described above.  Second, the Court declines to base its decision on the perceived logic, or even lack of logic, that a defendant

6

may only be held liable for constructing a facility, rather than operating such facility, without complying with the permit requirements.  This is a legislative choice that lies outside the province of this Court, which is charged neither with formulating policy nor interpreting statutes in accordance with its own policy preferences, but only with adjudicating disputes that arise under the legislatively enacted policy.

Another district court judge outside this District has presented a compelling argument contrary to the analysis quoted above:

> Plaintiff contends that claims one, two and three accrue each day that defendant operates its sulfur recovery unit and No. 2 distillate unifier without the proper Prevention of Significant Deterioration permits or utilizing the Best Available Control Technology and that the statute of limitations does not begin to run until the illegal conduct is complete. According to plaintiff, defendant's failure to undergo the Prevention of Significant Deterioration permitting process means that defendant is operating its sources continually in violation of the restrictions of the Clean Air Act. Defendant disagrees, pointing out that the federal and state statutory framework under which plaintiff seeks relief establishes separate permitting programs for pre-construction permits and operation permits. *See* 42 U.S.C. § 7475 (pre-construction permits), § 7661 (operation permits); 40 C.F.R. § 52.21 ... .  Citing this statutory framework, defendant argues that a failure to obtain the proper permit or use the proper technology is a violation of the Clean Air Act that accrues only once: on the day construction commences without the required permit or technology. If defendant is correct, the statute of limitations would have expired long ago.
>
> Plaintiff seeks relief for claims one, two and three under 42 U.S.C. § 7475, which is entitled "Preconstruction requirements." Section 7475 provides that
>
> > (a) **Major emitting facilities on which construction is commenced.** No major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area to which this part applies unless-
> > (1) a permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part;
> > (2) the proposed permit has been subject to a review ...
> >
> > ...

7

(4) the proposed facility is subject to the best available control technology for each pollutant subject to regulation under this chapter emitted from, or which results from, such facility;

Section 7661 governs operation permits, stating

[I]t shall be unlawful for any person to violate any requirement of a permit issued under this subchapter, or to operate ... a major source ... except in compliance with a permit issued by a permitting authority under this subchapter.

...

Relying on the distinction between construction and operation permits, defendant argues that plaintiff's claims relating to the pre-construction permitting process are time-barred. In defendant's view, plaintiff could have brought claims alleging that defendant failed to operate its major sources in compliance with the Clean Air Act; it chose not to, focusing instead on the alleged deficiencies in the construction and permitting process, as shown by its invocation of 42 U.S.C. § 7475 (Preconstruction Requirements). ... [T]he federal ... statutory scheme[] set[s] forth separate guidelines for constructing or modifying a major source and for operating a major source.

Other district courts have reached similar conclusions. In *United States v. Campbell Soup Co.*, No. S-95-1854, 1997 WL 258894 (E.D.Cal. March 11, 1997), for example, the United States brought suit against Campbell Soup for violations of the Clean Air Act, alleging that the company had failed to get the necessary construction permit and was operating certain machines without using the best available control technology. In response to Campbell Soup's assertion that the government's claims were barred by the statute of limitations, the government relied on the continuing violation doctrine, arguing that "Campbell continues to operate the machines that were built without permission." *Id.* The district court held that the state implementation plan distinguished between building a machine and operating it and that in its notice of violation, the government had not charged Campbell with violating the section of the plan that governed operation. *Id.* at *1. The court concluded that "even if the underlying intent behind the [California state implementation plan] regulation is to assure continuing air quality, the regulation cannot reasonably be construed to mean that building or altering a machine without a permit is a violation that continues as long as the machine still exists or is operated." *Id.* at *2.

In *United States v. Brotech Corp.*, No. 00-2428, 2000 WL 1368023 (E.D. Pa. September 19, 2000), the government argued again that it could recover

8

damages for permit violations because the continuing violations doctrine tolled the statute of limitations. Citing *Campbell Soup,* the district court rejected the application of the continuing violations doctrine, stating, "[v]iolations of the various requirements to obtain construction permits or plan approvals occur at the time of the construction, modification, or installation of the equipment or facility." *Id.* at *3. *See also United States v. Westvaco Corp.,* 144 F.Supp.2d 439, 444 (D.Md.2001) ("[T]his Court follows the rationale of *Brotech* and holds that the statute of limitations bars the Government from bringing claims based on preconstruction permit violations where the construction was complete more than five years prior to the commencement of the lawsuit."); *Ogden Projects, Inc. v. New Morgan Landfill Co.,* 911 F.Supp. 863, 876 (E.D.Pa.1996) ("We agree that a violation of the [ ] permitting requirement occurs at the time of construction as the statute requires a preconstruction permit.")

In *United States v. Louisiana-Pacific Corp.,* 682 F.Supp. 1122, 1130 (D.Colo.1987), the district court for the District of Colorado examined the language of the regulations implementing the Clean Air Act to determine the timing of a violation of the Prevention of Significant Deterioration regulations. Specifically, 40 C.F.R. § 52.21(r)(1) provides that "any owner or operator of a source or modification ... who commences construction ... without applying for and receiving approval hereunder, shall be subject to appropriate enforcement action." *See also* 40 C.F.R. § 52.21(i)(1) ("No stationary source or modification ... shall begin actual construction without a permit ... ."); § 52.21(b)(11) (defining the term "begin actual construction" as "initiation of physical onsite construction activities on an emissions unit which are of a permanent nature."). The court concluded from the language in the regulations that "the violation occurs when the actual construction is commenced, and not at some later point in time." *Id.* at 1130.

In support of its position that claims one, two and three are continuing violations, plaintiff cites *United States v. Marine Shale Processors,* 81 F.3d 1329 (5th Cir.1996). The United States charged Marine Shale with violating the Clean Air Act by operating several minor emission sources without a permit. Marine Shale argued that "because emissions from each minor source began more than five years before the United States filed suit, section 2462 bars all minor source fines, even those occurring within five years of the filing of the complaint." *Id.* at 1357. The court rejected this argument, stating, "[s]ection 7413(b) contemplates a fine for each day a minor source operates in violation of the law, and section 2462 limits the number of days to five years before the filing of the complaint." *Id. See also United States v. American Electric Power Service,* Nos. 2:99-CV-1182, 2:99-CV-1250, 2001 WL 332496, at *5 (S.D. Ohio March 30, 2001) ("This Court concludes that 28 U.S.C. § 2462 limits the time to five years in which civil penalties may be sought for days in which the Defendants allegedly violated the [Clean Air Act].").

9

It is not clear whether the government charged Marine Shale with violating the relevant construction permit requirements or the operation permit requirements or both, a distinction that is crucial in determining the continuing nature of the violation.  In addition, in *Marine Shale,* the court used the statute of limitation as a way to limit plaintiff's damages for defendant's refinery's emissions from minor sources to a five year period even though the emissions had begun more than five years before plaintiff brought suit.  Limiting the number of days for which a plaintiff can recover damages to the length of the statute leaves the question whether the statute of limitations bars a plaintiff from bringing the suit at all; the statute of limitations seeks not only to limit damages, but also to accomplish such goals as preventing stale claims and assuring diligence in pursuing claims.  If plaintiff demonstrates at trial that the statute of limitations has been tolled on its Clean Air Act claims, it will be necessary to decide the period for which it may seek damages.

It appears that nothing in the statute creates a continuing liability for a facility's failure to obtain a pre-construction permit, a situation that strikes plaintiff as nonsensical.  In its opinion, a one-time fine of $25,000 for failure to obtain the necessary pre-construction permits would be wholly inadequate. Without deciding the issue at this stage of the proceedings, I note that because defendant may be subject to injunctive remedies that can include shutting down the new construction or requiring extensive (and expensive) modifications, *see United States v. Banks,* 115 F.3d 916, 919 (11th Cir.1997) (holding that statute of limitations in § 2462 does not bar government from bringing action for injunctive relief under Clean Water Act), a $25,000 penalty does not amount to a cost-free decision for defendant.  To the contrary, the one-time fine would entail great expense for defendant, if it were coupled with the costs of complying with an injunction requiring remedial efforts.

... I am persuaded that the statute of limitations for a violation of the pre-construction permit requirements under 42 U.S.C. § 7475 begins to run at the time of construction and does not continue through the operational life of the modified source. Therefore, plaintiff cannot rely on the continuing violation doctrine to toll the statute of limitations on claims one through three.

*U.S. v. Murphy Oil USA, Inc.*, 143 F. Supp. 2d 1054, 1080-84 (W.D. Wis. 2001).

This Court finds the *Murphy Oil* analysis, echoed in many of the cases to which AEP cites (Doc. # 9, at 9 n.53), persuasive.  The Court thus respectfully disagrees with the continuing-violations analysis that supports striking the statute of limitations defense.  The statutory scheme

under which the United States proceeds targets a *construction* permit and to construe that narrow scheme as sweeping within its scope continuing violations as the government urges this Court to do would be to turn the statute into an *operating* regulatory scheme. The Court declines to broaden the scope of the statute in such an impermissible way and instead recognizes the legislative scheme in place. Accordingly, the Court **DENIES** the United State's motion to strike the fifth affirmative defense in regard to the claims for civil penalties.

This leaves the injunctive relief aspect of the claims. In contrast to the foregoing analysis, the Court agrees with persuasive authority from this District that § 2462 applies only to civil penalties and does not bar injunctive relief. *United States v. American Electric Power Corporation*, 137 F. Supp. 2d at 1068 (citing *United States v. Telluride*, 146 F.3d 1241 (10th Cir. 1998) ("this Court is not convinced that the request for injunctive relief to remedy past conduct changes the remedial nature of the relief. Clearly, the nature and/or extent of injunctive relief may well change because of the lapse of time. Further, relief may be dependent upon whether a particular modified source is still being operated. Such issues, however, must await resolution on the merits. The Court cannot conclude, at this juncture, that all injunctive relief is necessarily punitive in nature."). The Court also agrees that the concurrent remedy doctrine does not apply to injunctive-relief actions brought by the United States. *Id*. *See also Sierra Club*, 2005 WL 1972549, at *4. In addressing the issue of whether the concurrent remedy doctrine affects claims for injunctive relief under the Clean Air Act when the statute of limitations bars claims for damages, one district court judge has explained:

> In [*United States v. Banks*, 115 F.3d 916 (11th Cir. 1997)], the Eleventh Circuit addressed the issue whether the concurrent remedy rule was applicable in a Clean Water Act case. The court explained that the concurrent remedy rule had to be read in conjunction with the well-established rule that " 'an action on behalf

11

of the United States in its governmental capacity ... is subject to no time limitation, in the absence of congressional enactment clearly imposing it' " as well as the canon of statutory construction that "[s]tatutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government." *Id.* at 919 (quoting *E.I. Dupont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924)).  The court of appeals noted that "[t]he statute [of limitations] is enforced against the government only when the government is acting to vindicate *private* interests, not a sovereign or public interest." *Id.*  Concluding that § 2462 applies to civil penalties only, the court held that "the concurrent remedy rule cannot properly be invoked against the government when it seeks equitable relief in its official enforcement capacity." *Id.; see also United States v. Telluride Co.,* 146 F.3d 1241, 1249 (10th Cir.1998) ("we conclude the concurrent remedy rule does not bar the Government's claims for equitable relief"); *United States v. Hallmark Construction Co.,* 14 F.Supp.2d 1069, 1077 (N.D.Ill.1998) ("The Clean Water Act does not contain an express statute of limitations.  The important question is whether the five-year statute of limitations set forth in 28 U.S.C. § 2642 for legal remedies applies to claims for equitable relief by the United States.  The majority of courts have concluded that 28 U.S.C. § 2642 does not apply to claims for equitable relief by the United States. These courts express the better view.")

    I agree that the five year statute of limitations applies to claims for civil penalties only. *See Campbell Soup,* 1997 WL 258894, at *1-2 ("Given the express statutory language that gives the Administrator power to bring an action 'without regard to the period of violation,' constrained only by § 2462 which does not address injunctive relief, the court finds that the government may seek equitable relief beyond the five year statute of limitations for penalty actions."); *see also Westvaco Corp.,* slip op. at 11 (holding the same).

    Because nothing in the Clean Air Act itself or § 2642 precludes the government from seeking injunctive relief beyond the five year statute of limitations period ... claims for injunctive relief ... are not barred by the statute of limitations even if § 2462 precludes it from recovering damages.

*Murphy Oil USA, Inc.*, 143 F. Supp. 2d at 1086-87.  This Court agrees with the *Murphy's Oil* rationale and similarly concludes that neither § 2642 nor the concurrent remedy doctrine can preclude the claims for injunctive relief asserted here under all sets of circumstances.  *See also Telluride*, 146 F.3d at 1248-49 ("For the same reasons applied in Banks, we conclude the concurrent remedy rule does not bar the Government's claims for equitable relief").

This is not to say, however, that the limitations period of § 2642 is not possibly relevant. That statute covers penalties, pecuniary and otherwise, and if the United States should prevail and pursue injunctive relief constituting a punitive remedy, then AEP's fifth affirmative defense may–not shall, but *may*–be applicable.  *See Telluride*, 146 F.3d at 1245-46.  The Court cannot properly resolve that issue today in the context of a motion to strike; the issue remains for later potential adjudication on its merits.[4]  Accordingly, the Court also **DENIES** the United States' motion to strike the fifth affirmative defense in regard to the injunctive relief claims.

### 2.  *Laches and equity*

AEP's sixth affirmative defense targets alleged due process and fair notice violations predicated on a "failure to raise claims."  (Doc. # 2, at 30.)  The company's sixteenth affirmative defense rests on "the equities of this case."  (Doc. # 2, at 34.)  Finally, AEP's twentieth affirmative defense asserts "the doctrines of laches, estoppel and waiver."  (Doc. # 2, at 35.)  Because the parties refer to these sections in portions of their briefing in often imprecise terms, the Court shall as a threshold matter attempt to identify what lies at the core of each asserted defense.

It appears that by asserting laches/estoppel and "equitable grounds" in its sixth, sixteenth, and twentieth affirmative defenses, AEP is simply targeting in various ways the same issue: asserted governmental delay.[5]  Of these affirmative defenses, the most ambiguous is the

---

[4]  Just as the Court declines to accept AEP's self-serving characterization of any potential equitable relief as punitive, so too does the Court decline to simply accept the United States' proposition that restorative relief can never be punitive.

[5]  AEP has abandoned its constitutional claims, which means that its sixth affirmative defense has either been abandoned or remains just another way of recasting laches.

sixteenth.  To the extent that "the equities of this case weigh against [injunctive] relief" can be said to raise any cognizable affirmative defense as opposed to simply a statement on the perceived merits of the litigation, the Court will construe the language in accordance with AEP's interpretation.

AEP's memorandum in opposition clarifies that the company is only pursuing its sixteenth affirmative defense against injunctive relief and not against the entirety of the United State's case.  (Doc. # 9, at 13-15.)  This makes the defense redundant.  (Doc. # 9, at 15.) Moreover, the United States correctly notes that the company has abandoned any possible intent it held to assert laches against the civil penalty claims, leaving only the claims for injunctive relief.   AEP thus asserts some form of the doctrine of laches, estoppel, or waiver in its sixth, sixteenth, and twentieth affirmative defenses as a defense to the United State's entitlement to injunctive relief.

In response, the United States notes that the government is exempt from laches, with a *possible* limited exception for contract cases.  *Hatchett v. United States*, 330 F.3d 875, 887 (6th Cir. 2003) (collecting cases).  *See also United States v. Skorepa*, 5:05 CV 750, 2005 WL 3634605, at *6 (N.D. Ohio Dec. 20, 2005) ("Laches is unavailable in suits brought by the government in its sovereign capacity").  The same rationale applies to each variation of the concept, all of which target purported undue delay.  *See, e.g., United States v. Newcome*, No. 2:04-CV-650, 2005 WL 2230205, at * 5 (S.D. Ohio Sept. 12, 2005) (noting that laches, estoppel, and waiver do not apply against the government in cases in which it is asserting its rights).

AEP recognizes the existence of such Sixth Circuit decisions, but argues that some circuits, such as the Seventh Circuit, have read several Supreme Court decisions as eroding the

traditional rule that laches does not apply against the United States. In the alternative, the company argues that even if undue delay is not a bar to the United State's claim, it remains a factor to be considered in determining penalties or injunctive relief. Thus, AEP asserts, its assertion of laches as an affirmative defense against injunctive relief "is simply a recognition of this Court's equitable discretion." (Doc. # 9, at 15.)

It is well settled that laches cannot bar the government from pursuing a claim. Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3652 ("claims by the United States cannot be barred by the equitable doctrine of laches"). But as even the United States notes, AEP can assert undue delay as a factor weighing against any potential injunctive relief that the United States might seek. (Doc. # 10, at 15.) The purported delay does not rise to the level of a cognizable affirmative defense, but no party should misread the effect of today's decision. AEP can argue undue delay if and when appropriate as a factor for the Court to consider in deciding the appropriate injunctive relief.

The Court **STRIKES** AEP's affirmative defense of laches, estoppel, waiver, and equitable considerations in its sixth, sixteenth, and twentieth affirmative defenses.

### 3. *Rulemaking defenses: Jurisdiction under Clean Air Act*

AEP asserts various rulemaking defenses in its seventh, ninth, tenth, eleventh, and twenty-fifth affirmative defenses. Underlying these defenses is AEP's contention that the EPA essentially promulgated a regulation without following the proper notice-and-comment procedures. Thus, the company asserts, the instant action should be resolved by applying the Administrative Procedure Act's prohibition on illegal rulemaking.

The United States moves to strike these defenses on the grounds that they "merely raise a

dispute ... regarding the proper interpretation and application of the law at issue." (Doc. # 6, at

16.) Thus, the government argues, AEP's asserting that the interpretations at issue here amount

to improper rulemaking are incorrect. The United States also asserts that even if rulemaking

were involved, 42 U.S.C. § 7606(b) precludes review before this Court.[6] AEP disagrees, arguing

that because it raised the rulemaking argument as a defense, not as a counterclaim, the

rulemaking allegations are properly before the Court and should survive the motion to strike.

The Court has reviewed the parties' arguments and the case of *United States v. American*

*Electric Power Service Corporation*, 218 F. Supp. 2d 931 (S.D. Ohio 2002). In that case,

another judge in this District addressed the very arguments at issue here:

> The Plaintiffs move to strike several of the Defendants' Affirmative
> Defenses to the extent that the defenses assert that the Plaintiffs' interpretation of
> the CAA regulations is in violation of the public notice and comment
> requirements of the Administrative Procedure Act ["APA"], 5 U.S.C. § 551, *et*
> *seq.* In particular, the Government takes issue with the Seventh, Ninth, Tenth,
> Eleventh and Twenty-Sixth Affirmative Defenses raised to the Government's
> Complaint. In these defenses, the Defendants assert that the Government's
> interpretations of the PSD, NNSR and NSPS requirements (*i.e.*, the "routine
> maintenance, repair or replacement" requirements) are markedly different from
> historical interpretations of the same terms in the CAA. According to the
> Defendants, the new interpretations should be have been subject to public notice
> and comment.

> The Government argues that this Court is without jurisdiction to entertain
> Defendants' challenges in light of 42 U.S.C. § 7607(b), which vests exclusive
> jurisdiction to hear challenges to EPA regulations in the Court of Appeals for the
> District of Columbia Circuit.

---

[6] The Clean Air Act vests the United States Court of Appeals for the District of
Columbia with exclusive jurisdiction over, *inter alia*, nationally applicable regulations
promulgated by or final action undertaken by the Administrator. 42 U.S.C. § 7607(b)(1). The
Act also provides that "[a]ction of the Administrator with respect to which review could have
been obtained under [§ 7606(b)(1)] shall not be subject to judicial review in civil or criminal
proceedings for enforcement." 42 U.S.C. § 7607(b)(2).

According to the Government, Defendants' assertions are identical to those presented by defendant in *United States v. Ford Motor Co.*, 736 F.Supp. 1539 ( W.D. Mo. 1990).  In that case, the EPA sued the defendant automobile manufacturer for allegedly violating a state implementation plan promulgated under the CAA.  The Defendant presented a counterclaim challenging the Government's suit as part of a "national litigation strategy" adopted by the EPA that had the effect of a regulation but was not made subject to the Administrative Procedures Act.  In particular, the Defendant argued that the EPA, as a matter of internal policy, commenced enforcement actions while ignoring valid regulations.  The district court concluded that, to the extent the Defendant's argument was presented in the context of a counterclaim, the court was without jurisdiction to entertain the same because the allegations, taken as true, presented an attack on a final agency action, cognizable only in the Court of Appeals.  The court observed, however, that it was permissible for the Defendant to present its arguments as a defense to the enforcement action.  *Id.* at 1552.

Defendants in this case point out that Magistrate Judge Kemp has permitted discovery on the issue of Plaintiffs' interpretations of the various New Source Review regulations and whether those interpretations conflict with the prior applications of the regulations.  Further, Defendants argue that the Plaintiffs' interpretation of the regulations is not subject to § 7607 because it is not a "final action of the Administrator" for purposes of the statute.  Defendants rely on *United States v. Zimmer Paper Prods., Inc.*, 733 F.Supp. 1265 (S.D. Ind. 1989) in support of this position.  In that case, the United States sought civil penalties and injunctive relief for the Defendant's alleged violation of the CAA.  The Defendant brought a counterclaim challenging the validity of an EPA internal memorandum allegedly used to interpret the regulations the Defendant was accused of violating.  The district court observed that it was undisputed that the memorandum was not a nationally applicable regulation officially promulgated by the Administrator nor was it published in the Federal Register.  Accordingly, the court held that Defendant's challenge to the memorandum was not a "final action of the Administrator" under § 7607(b).  *Id.* at 1269-70.

Defendants cite *Donner Hanna Coke Corp. v. Castle*, 464 F.Supp. 1295 (W.D. N.Y. 1979), for a similar proposition. In that case, the court held that § 7607(b) did not preclude it from reviewing the EPA's enforcement of an order which had not been subject to the rulemaking process under the APA.

In this case, although Defendants assert that the Government's interpretation of the various regulations should have been subject to notice and comment procedures under the APA, it is undisputed that the same has not occurred.  Moreover, Defendant's argument is unlike those presented in *Zimmer* and *Castle* in which the defendants challenged specific regulatory orders or promulgated interpretations of regulatory orders.  In contrast, here the Defendants

17

argue that the instant action itself amounts to a regulation, or a course of regulation when considered with other lawsuits, which should be subject to notice and comment. This Court rejects Defendants' characterization of the instant action as a "rule" that should be made subject to notice and comment under the APA and ultimately reviewed pursuant to § 7607. Furthermore, under 42 U.S.C. § 7607(b), "any . . . nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia." Thus, this Court would be without jurisdiction even if it were to conclude that Defendant's argument is correct.

The Court concludes, however, that the Defendants are entitled to challenge Government's interpretation of the rules in this enforcement action in defending Plaintiffs' claims. Thus, the Government's motion to strike is granted in part and denied in part on the rulemaking issue.

*Id*. at 946-49 (footnotes omitted).

The Court agrees with the foregoing analysis, but qualifies adoption of the ultimate conclusion that analysis reaches. The core underlying issue in this case is whether the law is what the EPA says it is; the EPA's interpretation of the law is therefore certainly subject to attack (and AEP may be able to introduce prior or claimed interpretations as relevant). But a dispute over interpretation does not equal an affirmative defense in the sense AEP asserts. Rather, as the United States correctly asserts,

Whether EPA's interpretation of the provisions of the statute and regulation is correct or not does not provide a defense to liability because Defendants' liability is predicated on violations of the statute and regulations, not on a violation of an EPA interpretation. If the Court does not agree that EPA's interpretation of those regulations is reasonable, the Court simply will not apply that interpretation.

(Doc. # 10, at 16.) Accordingly, the Court disagrees with that portion of the above analysis that did not strike the defenses and **STRIKES** AEP's rulemaking affirmative defenses in their entirety.

### 4. Rulemaking defenses: Congressional review

18

AEP raises an additional rulemaking argument in its twenty-sixth affirmative defense, which states that the United States' claims must fail because they are in violation of 5 U.S.C. § 801 *et seq*., which involves congressional review of agency rulemaking.  The United States contends that, like those defenses in the preceding section, this defense is inapplicable because there is no rulemaking involved here.  The United States alternatively argues that even if rulemaking were involved, 5 U.S.C. § 805 prohibits judicial review of a failure to comply with congressional oversight procedures.  AEP argues in turn that the legislative history of the statute permits the defense

The case of *United States v. American Electric Power Service Corporation*, 218 F. Supp. 2d 931 (S.D. Ohio 2002), also addressed this specific argument:

> The Government moves to strike the Defendants' affirmative defense which states that this "enforcement action and the claims asserted in the First Amended Complaint are in violation of 5 U.S.C. § 801, *et seq.*, Congressional Review of Agency Action."  (Twenty-Seventh Aff. Defense).  According to the Government, this enforcement action cannot be characterized as "rulemaking" for purposes of the statute.  Further, the Government argues that the defense is insufficient as a matter of law because even if the Government failed to comply with the statute, the statute specifically bars judicial review for the alleged violation.
>
> 5 U.S.C. § 801(a)(1)(A) provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing-- (i) a copy of the rule; (ii) a concise general statement relating to the rule, including whether it is a major rule; and (iii) the proposed effective date of the rule."   Section 805 provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review."  5 U.S.C. § 805.
>
> The Defendants take issue with the stated bar to judicial review. According to Defendants, the statute does not preclude a court from considering whether a rule is in effect. In support of this position, Defendants point to the legislative history of statute.  (*See Memorandum contra* at 14 citing 142 Cong. Rec. S3686 (April 18, 1996)).  Defendants do not, however, articulate in what manner this action constitutes "rulemaking" for purposes of the statute.

In support of its position, the Government relies upon *Texas Sav. & Community Bankers Assoc. v. Federal Housing Finance Bd.*, No. 97CA421, 1998 WL 842181 (W.D. Tex. June 25, 1998).  In that case, three thrift institutions and two of their trade associations sued the Federal Housing Finance Board challenging one of the Defendant's policies regarding the home mortgage lending industry.  Plaintiffs argued that the policy violated, *inter alia*, 5 U.S.C. §§ 801, *et seq.*  The district court declined to consider the argument on the basis that it was without jurisdiction. The court held that the language of the judicial bar in § 805 "could not be plainer."

This Court agrees that the language of § 805 is plain.  Indeed, the starting point of the Court's analysis is with the statute itself.  "If the intent of Congress is clear, that is the end of the matter."  *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quotation omitted).  Departure from the plain language of a statute is appropriate only in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters . . . or when the statutory language is ambiguous."  *Kelley v. E.I DuPont de Nemours & Co.*, 17 F.3d 836, 842 (6th Cir. 1994) (citation and internal quotation omitted).  In all other instances, the plain meaning of the statute controls.  *Id.*

Furthermore, this Court is not convinced that the instant enforcement action amounts to rulemaking which would be covered by 5 U.S.C. §§801, *et seq.*, in the first instance.  For this reason, as well as the plain language of the jurisdictional bar, the Governme

*Id.* at 946-49 (footnotes omitted).  The Court finds the foregoing analysis sound, adopts the

stated rationale, and **STRIKES** AEP's twenty-sixth affirmative defense.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

United States' motion to strike as described herein.  (Doc. # 6.)  The Court **STRIKES** AEP's

sixth, seventh, ninth, tenth, eleventh, sixteenth, seventeenth, twentieth, twenty-fifth, twenty-

sixth, twenty-ninth, thirtieth, thirty-first, thirty-third, and thirty-fourth affirmative defenses.  The

Court **DOES NOT STRIKE**, however, AEP's fifth affirmative defense.

As with all interlocutory orders, these decisions remain subject to modification in light of

changed circumstances, such as the issuance of a contrary controlling appellate decision.  The

20

Court recognizes that the Sixth Circuit could potentially issue a decision this year on several of the issues in this case. The Court in its discretion declines, however, to stay these proceedings either on the chance that the appellate decision will resolve this litigation or to review arguments regarding proposed regulations that can form the basis for subsequent dispositive motions. The former proffered reason for a stay is predicated upon guesswork and fails to give due weight to the delay that has already plagued this litigation, while the latter proffered reason circumvents the process in an effort to place arguments before the Court without the context of a dispositive motion. The Court therefore **DENIES** Defendants' motion for a stay. (Doc. # 27 in 2:04-cv-1098; Doc. # 24 in 2:05-cv-360.)

Two additional matters remain. The Court notes that the State Plaintiffs in Case No. 2:04-cv-1098 have filed an Unopposed Motion to Extend Deadline for Filing Expert Reports and Disclosures (Doc. # 36 in 2:04-cv-1098), while both sides in Case No. 2:04-cv-1098 have filed a Joint Motion to Establish Uniform Schedule for Discovery and Dispositive Motions (Doc. # 37 in 2:04-cv-1098). The Court **GRANTS** the motions (except for the proposed dates) and schedules an in-person **status conference for April 5, 2006 at 9:00 a.m. in Courtroom 4**. All counsel in both consolidated cases must attend. The Court will set the litigation schedule that will govern both cases at that time, and the parties should regard the previously set deadlines as moot.

**IT IS SO ORDERED**.

s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE